Good morning, Your Honors. My name is Seth Gordon, and along with Mr. Chris Christensen, we represent the petitioner in this case, Mr. Hernandez-Perez. At this time, we respectfully request that two minutes be reserved for rebuttal, and the remaining eight minutes will be divided equally between Mr. Christensen and myself. Your Honors, in its opinion, the BIA states, and I quote, that Mr. Hernandez's guilt pursuant to an Alford plea is inconsistent with his claims of innocence. Your Honors, not only is this an error of law, but it goes to the very heart of this case, which is that the agency did not understand the legal implications of Petitioner's guilt in an admissibility setting. Your Honors, as briefed before both the EIJ and the BIA, while an Alford plea may be a conviction for immigration purposes, it is not a factual admission of guilt. The Supreme Court has held that an Alford plea, which allows a defendant to plead guilty while maintaining his innocence, where a basis exists to reasonably believe a jury could find him guilty, is constitutionally permissible. Your Honors, therefore, a defendant who maintains his factual innocence is allowed to plead guilty while never having to make a factual admission to the underlying facts surrounding the crime. Now, when I looked at what the EIJ was saying, it seemed that he was looking at the Mendez-Morales factors, and he says, going down them, one, he was convicted of a crime. That's correct. And, two, he showed no remorse, and that was correct. The reason for him not showing remorse was that he was asserting his innocence. But I'm having trouble understanding why those two findings by the EIJ, which were clearly in conjunction with the Mendez-Morales factors, raise any problem with the EIJ's conclusion. Can you address that? Yes. And thank you for bringing that up, Your Honor. Mr. Hernandez contends that the misunderstanding of Alford in this case led to multiple errors, and those errors include the EIJ cutting off Petitioner's testimony on remorse and rehabilitation, furthermore, taking over the questioning on direct for a significant amount of time, treating Petitioner's evidence with disbelief without a reasonable basis, making snide comments to the veracity of Petitioner's testimony, both to Petitioner and to Petitioner's counsel, and, most importantly, and this goes, I believe, directly to your question, Your Honor, is that the major problem in this case is that the EIJ came in to the 212-H case with the preconceived notion that Mr. Hernandez would come in seeking a waiver of inadmissibility, admit to the factual conduct surrounding the underlying conviction, and then express remorse for that particular conduct. That is a requirement under Mendez-Morales, that that's one of the factors that the EIJ is looking for. But are you now making the argument that the EIJ showed bias, and so there was a due process issue raised by some bias? Yes, Your Honor. The misunderstanding offered Petitioner contends one of the effects of that misunderstanding did ultimately lead to the EIJ, in this case, acting as a non-neutral arbiter with bias. And also to address the factors of Mendez-Morales, this Court has held that while expressing remorse for the underlying conduct of the particular conduct for the crime is one way to demonstrate rehabilitation, there are other scenarios, and in that case, which I can't think of off the top of my head at the moment, there are other ways to express remorse without admitting to the particular conduct of the criminal conviction. Assume, or just assume, that we remand this case back to the immigration judge. Should it be remanded back to Washington or Idaho? Thank you, Your Honor. And I believe that Mr. Christensen will be addressing this more directly, but to answer your question, we would request that it be, because of the change of venue issues that Mr. Christensen will address, we would request that it be remanded back to Idaho. What gives us that authority? Again, Your Honor. The case came back from Washington. Why do we have the authority to send it to the back to Idaho? If I could defer that question to Mr. Christensen, he will be addressing that. Your Honors, if the IJ didn't believe Mr. Hernandez, he could have made an explicit adverse credibility finding that would have put Petitioner on notice that he needed to refute such a determination. What was it that he didn't believe? I mean, the two points, that he was convicted of a crime and that he didn't show remorse, seemed to be consistent with the testimony. Well, he didn't believe Petitioner's, Mr. Hernandez's, assertions of innocence. And if I could point this court to the record, at one point the IJ states, do you think other people were just standing around and somehow you are, do you think that other people were just shooting it out and somehow you had to go to jail because of that? But the innocence wasn't one of the issues in the Mendez-Morales factors that the IJ was looking at, right? That was a separate issue? Well, the problem is, Your Honor, is that the IJ made innocence an issue. And at this time, I see I'm close to my four minutes, so I'll step down and allow Mr. Christensen to address the court. Thank you, Your Honors. All right. You're a law student? Yes, Your Honor. Good job. May it please the Court. My name is Chris Christensen. In addition to the errors that the agency committed related to Alford, the agency committed numerous other legal, regulatory, and constitutional errors, as addressed in both of the briefs. I will be addressing a couple of the most egregious errors, including the failure to evaluate whether good cause existed, and granting the change of venue, and the failure to examine all of the evidence concerning extreme hardship, and the uneven and unfair application of rules of evidence, all to the detriment of Fernandez's case. First, in this case, 8 CFR 1003.2 states that an IJ may grant a change of venue upon a showing of good cause. Good cause has been interpreted in case law to break down into six factors. However, in this case, DHS's motion for the change of venue does not contain a single reason as to why the change of venue is proper. That motion will be found at AR 1325. Additionally, the IJ doesn't give any insight into why he granted the change of venue. While the BIA does pay lip service to the factors and mentions them, this court is composed to be nailed that an IJ and agency must look at the specific individual circumstances of each alien before determining whether good cause exists and granting a change of venue. In that case, this did not happen. Like I said, the IJ did mention the six factors, but failed to apply the law to them. Additionally, when the change of venue was granted from Boise to Tacoma, Fernandez lost his statutory right to counsel of his own choosing, as laid out in 8 U.S.C. 1362. In order to answer your Honor's question, because we're arguing that both the IJ and the BIA came to the wrong decision in granting the change of venue, it would be proper for this court to remand with instructions that the case be reopened again in Idaho. Concerning the extreme hardship, there are three problems related to extreme hardship. First, the agency failed to consider psychological evaluations of both Hernandez's mother and daughter. Second, the agency failed to consider evidence of unique and close relationship that existed between them. And third, the agency evaluated the wrong time frame. Okay. Can I ask, since your time is running out, if you want some time for rebuttal, can I ask a question about the period in which Mr. Hernandez had supported his daughter? That was one of the issues, or the arguments that was made, that he had taken the daughter with him to Mexico. How long, then, were they separated? In other words, the daughter was with him in Mexico for some period. It was a very short period. They were separated for almost six years, your Honor. Okay. So, what was wrong with the IJ's finding, then, the finding that he had not supported his daughter for some extended period of time? Your Honor, I quote, the IJ said that the respondent has not had meaningful, significant family ties with his United States citizen daughter for years. However, the record contains over 120 pages of pictures, of cards, of letters. There are many affidavits and declarations talking about the frequent phone calls that Hernandez made to his daughter while he was in prison. None of the- How about while he was in Mexico, though, with his new wife? Your Honor, indeed, contact was more difficult when he was in Mexico. We don't have letters. There were some infrequent phone calls. But the most recent time period is the three years that he was in prison, and during that time, as evidenced in the record, there's an abundance of letters, telephone calls, and yet the IJ and the BIA completely discounted this evidence. In Baton, this court held that while the agency mentioned the opinion of two doctors, it failed to mention the opinion of one of them, who's a psychiatrist, that if Baton was deported, it could potentially lead to long-term psychiatric hospitalization. In this case, both Dr. Cantone evaluated Hernandez's daughter, and Dr. Wakefield evaluated Hernandez's mother. Dr. Wakefield concluded, and I quote, in my professional opinion, Ms. Avila is highly likely to commit suicide if her son is deported. Certainly, if this court thought that the psychiatrist's opinion in Baton, that a remand was warranted when they failed to discuss the conclusion that deportation could lead to long-term psychiatric hospitalization, a remand is necessary in this case, where a psychologist has concluded that deportation could lead to suicide. Thank you. I will hear from the government. May it please the Court. Eric Marsteller for the Attorney General. Mr. Hernandez, this Court lacks jurisdiction to consider the plaintiff's case.  Well, I'm a trial attorney for the Office of Immigration Litigation, Your Honor. Why? Because sometimes we get people that we just grab off the shelf, you know. Well, Mr. Marsteller obviously knows the law, so someone with experience. Well, I can tell he's a very bright young man. Thank you, Your Honor. We contend that this Court lacks jurisdiction to consider the agency's discretionary denial of Mr. Hernandez's request for a 212-H waiver. The lack of jurisdiction is based on a few different grounds. The first is the language of Section 212-H itself, which specifically states that no court shall have jurisdiction over an appeal from a denial of a request – I'm sorry, I'm quoting the wrong language – no court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection. Similar language in Section 240b-F of the INA. This Court has cited as a model for the designation of a discretionary determination to the Attorney General, the type of which it would lack jurisdiction to adjudicate. Secondly, under INA Section 242a-2b, which is 8 U.S.C. 1252a-2b, there is no jurisdiction to review any judgment regarding the granting of relief under Section 1182-H, which is 212-H. In Montero-Martinez, the Court said that judgment as defined in that statute meant a discretionary judgment. In this case, whether or not Mr. Hernandez was eligible for the 212-H waiver was a discretionary determination over which the Court would lack jurisdiction.  Pardon me, Your Honor? How about the right to habeas corpus? In the – in passing 8 U.S.C. 1252a-2d, Congress added that the alien has the – this Court has jurisdiction to hear legal questions and constitutional claims. So the Court does have jurisdiction to the extent that Mr. Hernandez raises due process claims or legal questions to consider those. However, we feel that all of the – That's part of his argument. And that's – yes, Your Honor, and I'm about to get to that. We argue that the Court – that his – all of his due process claims are meritless in this case. Well, let me – let me ask you this. Did the I.J. disregard the psychological or psychiatric evidence? No, Your Honor. The immigration judge specific – did not necessarily specifically reference every piece of evidence, but said that he was considering all of the evidence in the record. Yeah, but, I mean, here you have evidence from these two doctors that sort of goes to the heart of – of the claim here, and – but you would – you would expect that there'd be some reference to it, but there's not. And there's no indication that it was considered, except, you know, this general statement that he considered all the evidence. But I'm just wondering if that isn't a violation of due process. Well, you know, the evidence is there. It's critical. And there's no mention that it was even considered, except, you know, generally. In this case, it doesn't really matter, Your Honor. The 212H waiver can be denied for two equally dispositive reasons. One is that the alien failed to establish the requisite extreme hardship to a family member to establish eligibility. Second, in the – as a matter of the agency's ultimate discretion, the 212H waiver can be denied after considering the discretionary factors discussed in Mendes Morales. And it was the – in this case, the denial was based principally on consideration of those – the equities and the adverse factors in Mr. Fernandez's – or Hernandez's case. So the extreme hardship was a secondary decision. But since the equities decision is itself dispositive, there's no need to – The equities, what – what was covered there? Well, in the equities, the immigration judge and then the board discussed as well went through the factors that the board described in Mendes Morales. As to the equities, one equity is if the alien has a lengthy residency in the United States. In this case, Mr. Hernandez fled the country for six years, so the immigration judge did not credit him with that equity. Second one is for rehabilitation. Again, the immigration judge did not credit him for rehabilitation. Thirdly, because he didn't express any – he didn't say that he had been rehabilitated because he said he had never committed the crime. And contrary to petitioners – I mean, he took this Allard plea. And, you know, I can't ever remember taking an Allard plea. And I thought it was a long time when I was on the district court. It was about 12 years. But I don't remember anything like that ever coming up. It's rare. So there – you know, I would suspect it must have been some unusual circumstances here to allow someone to take an Allard plea. It's not clear what the circumstances of the plea were. I would note, however, that the board addressed the issue raised by petitioners, which – where they alleged that the immigration judge gave – insisted upon remorse from Mr. Hernandez. Well, he was worried that if he didn't take this Allard plea that he – that perhaps he'd be facing a death penalty or something like that. Well, that was – and Alfred itself had to do a death penalty. In this case, he was just convicted for delivery of cocaine. So the death penalty factors wouldn't be involved. It might go – I believe there was a plea bargain. He was originally charged with, I think, aggravated battery. And that charge was reduced to aggravated assault. And that may have been a condition of the plea bargain. I'm not entirely certain. But regarding the remorse issue, the board noted that the immigration judge did not insist upon remorse or rehabilitation. Instead, the immigration judge just noted it as – noted the issue in his decision. Well, how did he say he wasn't rehabilitated? He was back here. He was working on his ranch in Idaho, huh? Well, he had only been in the country for three months. And that was after fleeing the country. Well, he worked there. And he was a hard worker. And the ranchers supported him. But most of the evidence regarding that Mr. Hernandez was a hard worker came from people who knew him 10 years prior when he was a high school student and before he had ever departed for Mexico. And then he went for Arizona, and then he was in Mexico. So he was out of the country. And within months after he came back, he was – he drew himself in, and he was convicted and served time in prison. That's correct. So this is right after he's left prison now where this immigration issue arises. Is that correct? That's correct, Your Honor. He had – at the time of the immigration judge proceedings, he had been released from state custody in Idaho. He turned himself in. I don't recall, Your Honor. I know in one of these two cases, they turned themselves in. In the other, they were arrested. I don't recall which is which. But he was arrested or criminal proceedings began about four months after he returned to the United States. At the time of the immigration judge's proceedings, he had been transferred from state custody in Idaho to DHS custody in Tacoma. And so at that point, he had only been working for – in the United States for about three or four months out of the previous six years – six plus – well, seven or eight, nine years. I can't – I don't know the exact time. So the immigration judge did not give a substantial credit to that equity. The immigration judge gave small credit, basically, for his family ties to his mother and daughter, largely. They didn't give too much credit because he had been out of the country for six years without supporting his mother or daughter. And he had been in jail for three years, I believe, without supporting his mother or daughter. As for the adverse factors, the immigration judge cited the aggravated assault conviction, cited that he had been a fugitive from the law for six years, that he did not see or financially support his daughter for six years, and that he left the United States without informing his family that he was departing. In this case, really, in a matter of the ultimate discretion, the simple fact that he was a fugitive from the law for six years is more than enough to – more than enough for the immigration judge to have concluded that he did not merit 212H relief as a matter of discretion. 212H relief is giving the alien permission to become a lawful permanent resident in the United States. And it seems that if someone is willing to ignore the laws of this country for six years, it seems perfectly reasonable for the immigration judge to determine he did not merit a grant of 212H relief, which would give him, again, permanent residence in the country in such circumstances. Unless there are any questions, Your Honor, we have a petition for review. All right. Thank you. Any rebuttal? May I just ask a preliminary question? Mr. Hernandez is out of the country now, right? Mr. Hernandez is deported at the moment. Okay. So he is now in Mexico? Correct, Your Honor. Thank you. First, I'd just like to address the jurisdictional issue that the government raises. Your Honors, this Court stated in Ramadan 2 that even where the statute explicitly designates the overall determination to be discretionary, we recognize that the application of law to fact does not entail the exercise of discretion. Furthermore, Your Honors, in Kwai Fun Wong v.  cannot be discretionary. So claims of constitutional violations are not barred by 1252a to b. Your Honors, the government cites to 1252b but fails to recognize that 1252a to d recognizes that nothing in this – nothing in subparagraph b or c or in any other provision of this Act other than this section, which limits or eliminates judicial review, shall be construed as precluding review of constitutional questions or questions of law. This is precisely what Mr. Hernandez is addressing before this Court. As to remorse, the government argues that Petitioner did not express remorse because he was – a government seems to assert that Mr. Hernandez was claiming that he was innocent and for that reason he had no culpability or did not express remorse. This is factually incorrect as demonstrated by the record. Your Honors, Petitioner at one point in the record states that I was sorry for what happened and I continue to feel remorse. I feel terrible that I didn't go to the police earlier after the January shooting in 1996. Furthermore, the record clearly demonstrates that Petitioner expressed remorse for leaving the country because he was scared after being implicated in the crime. The problem in this case is that the judge wanted remorse of particular conduct, which is not required under statute or by Mendez-Morales. And when Mr. Hernandez did not express remorse for that particular conduct, the case was effectively over in the mind of the immigration judge. And Your Honors, I see that I'm out of time again, so thank you for your time. All right, thank you very much. Is the supervising attorney here, Monica Shurman? Shurman. Oh, there you are. Well, thank you for your work and appreciate the help of the University of Idaho Law School. And I think it's a good experience for the students. They get a good idea of how things operate in this country. And that's all I really want to say because I don't want to get big speech right now. Yeah, well, you find out what's going on in the real world, don't you? And you're both going to be very, very excellent lawyers. Thank you. It's not all ready.
judges: Pregerson, Ferguson, Ikuta